### FOUNTAIN v. WHITEHEAD et al.

Where the owner of land rents it to a tenant and the latter sublets it, the landlord has a right to elect to treat the subtenant as his own tenant. If he does so and distrains against the subtenant, he can not do so for more than the contract price of rental agreed upon between himself and the original tenant. If the original tenant agreed to pay the landlord a part of the rent in money or in a portion of the crop and part in certain improvements on the premises, the landlord may distrain for the value of the improvements as well as for the money or the portion of the crop ; but in order to recover the value of the improvements, the same must be alleged in the affidavit.

Argued November 25, — Decided December 12, 1903.

Distress warrant. Before Judge Adams. City court of Dublin. January 14, 1903.

*James A. Thomas,* for plaintiff in error.
*Phil. P. Johnston* and *Peyton L. Wade,* contra.

SIMMONS, C. J.   Mrs. Shewmake died, leaving certain lands in which, under a will, she had a life-estate.   In 1899, through her agent, she had rented a house and eight acres of this land to Robinson, the agreed annual rental being 213 pounds of lint cotton, for which Robinson gave his note each year.   Robinson also contracted with the agent to clear up a four-horse farm by January 1, 1903, and until that date he was to have the use of this cleared land in consideration of his clearing it.   Robinson in 1900 and 1901 had cleared about seventy acres of the land, and, as a four-horse farm embraced about 120 acres, he had still fifty acres to clear.   In 1902 Robinson rented the land which he had cleared to Fountain.   What rental Fountain agreed to pay Robinson does not clearly appear.   Mrs. Shewmake's death was in 1901, and the lands were divided among her children according to the terms of the will creating the life-estate.   In the division the lands rented to Robinson, including the land which he was to clear, fell to Mrs. Whitehead and Mrs. Johnston.   In September, 1902, they, through their agent, having previously demanded rent of Fountain, had a distress warrant issued against him, claiming that he as their tenant was indebted to them for rent in the amount of 2,500 pounds of lint cotton of the value of $200.   This distress warrant was levied upon the crops of Fountain grown upon the land.   Neither

in the affidavit nor in the distress warrant was reference made to the contract to clear the land.    Fountain filed a counter-affidavit alleging that the sum distrained for was not due, and that he was not and had never been tenant of the plaintiffs.    The papers were returned to the city court of Dublin, and at the trial the jury returned a verdict in favor of the plaintiffs for $200, with interest and costs.    Fountain moved for a new trial.    The motion was overruled, and he excepted.

The view we take of the case renders it unnecessary to discuss all of the grounds made in the motion for new trial.    One of them was that the verdict was contrary to law and the evidence.    We think the court erred in not granting a new trial upon this ground. The evidence shows that Robinson rented a house and eight acres of land for a certain amount of cotton, and that he was to clear 120 acres of other land which he was to use until January, 1903, free of rent.    In 1902 he rented to Fountain a portion of the land which he had cleared, — some seventy acres.    It thus appears that Robinson was not indebted for any rent upon this portion of the land.    He had paid the rent for this much of the land (if the contract was one of rental at all) by clearing it, and it was his right to cultivate it if he wished to do so.    Had he cultivated it himself, it is clear that plaintiffs could not have collected rent from him for this seventy acres.    He chose, however, to rent it to Fountain instead of cultivating it himself, and the plaintiffs were no more entitled to collect rent from Fountain than they would have been from Robinson.    It is true that Robinson agreed to clear up 120 acres, and that of this he failed to clear up some fifty acres. This was a violation of his contract, for which we think Fountain was not liable.    Nor could Fountain be held liable as a subtenant whom the landlord had elected to treat as tenant.    This is true for at least two reasons:    (1) the rent was not due until 1903, and (2) the affidavit upon which the distress warrant was based did not mention the failure to clear up the land and the value of clearing it.    In *Wilkins* v. *Taliaferro,* 52 *Ga.* 208, the case relied upon by the defendants in error, the landlord was allowed to distrain for failure to "fix" a kitchen, proper affidavit being made as to the value or cost of such repairs.    In this case there was no allegation as to the value of clearing the land, and the landlord could not recover. In view of the affidavit made in this case, evi-

dence as to the value of clearing the land was irrelevant and inadmissible, for in no view of the case was the value of the land for rent in issue.    *Judgment reversed.  All the Justices concur.*